AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ20-623 |
| Two (2) SUBJECT DIGITAL DEVICES, more fully described in Attachment A | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 545 | Smuggling goods into the United States. |
| 18 U.S.C. § 5861(d) | Possession of unregistered firearms. |
| 18 U.S.C. §§ 922(a)(1)(A), 922(g)(1) | Unlawfully engaging in the business of importing firearms; Felon in possession of firearms |

The application is based on these facts:

✓ See Affidavit of HSI Special Agent Jill Peoples , continued on the attached sheet.

☐ Delayed notice of   90   days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Jill Peoples, HSI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   9/30/2020

_____
*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, United States Magistrate
*Printed name and title*
Judge

# AFFIDAVIT OF JILL PEOPLES

STATE OF WASHINGTON      )
                         )      ss
COUNTY OF KING           )

I, Special Agent Jill Peoples, having been duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), United States Department of Homeland Security, and have been so employed since December 2003. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") academy in Glynco, Georgia. I am currently assigned to the HSI Border Enforcement Security Task Force in Seattle, Washington, which is tasked with investigating violations of U.S. law involving contraband smuggling, trade fraud and financial crimes. Prior to my employment with HSI, I was a United States Probation Officer for approximately three years and was a Correctional Officer and Case Manager with the Bureau of Prisons for approximately three years.

2. During my career, I have participated in investigations and executed search warrants involving theft, fraud, money laundering, smuggling, import and export violations, counterfeit goods, crimes against persons and drug trafficking. Because of this training and experience, I am familiar with common methods of investigating import and export violations and have become familiar with how smuggling schemes work. This experience includes knowledge on how individuals unlawfully import, export, store and resell smuggled goods, how individuals use the U.S. postal system to move contraband and how those involved in contraband smuggling conduct financial transactions to facilitate smuggling activity. I am also familiar with the manner in which individuals illegally acquire and import firearms and firearm parts from foreign countries to the United States, and the unlawful resale and distribution of firearm and firearm parts within the United States.

3. I make this affidavit in support of an application under Rule 41 of the

AFFIDAVIT OF JILL PEOPLES - 1
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Federal Rules of Criminal Procedure for a search warrant authorizing the examination of
2   digital device or other electronic storage media, hereinafter the SUBJECT DIGITAL
3   DEVICES, which are currently in law enforcement possession, and the extraction from
4   those devices or electronic storage media of electronically stored information described
5   in Attachment B.

6          4.   The SUBJECT DIGITAL DEVICES are more specifically described in
7   Attachment A and as follows:

8                 a.    One black/gray iPhone with no visible model or serial
9          number, seized on September 17, 2020, from Camden Lamp during the
10         arrest of Lamp and execution of a federal search warrant at Lamp's
11         residence located at 23431 25th Ave S., Des Moines, Washington, as
12         further described below; and,

13                b.    One black Acer laptop with serial number
14         NXMMSAA0134361596C3400 during execution of a federal search
15         warrant on September 17, 2020, as further described below.
16

17         5.   The SUBJECT DIGITAL DEVICES are currently located at
18  at the HSI Seattle Office, 1000 2nd Avenue, Seattle, Washington 98104.  In my training
19
20  and experience, I know that the SUBJECT DIGITAL DEVICES have been stored in a
21  manner in which its contents are, to the extent material to this investigation, in
22  substantially the same state as they were when the SUBJECT DIGITAL DEVICES first
23
24  came into the possession of HSI.
25         6.   The warrant would authorize the forensic examination of the SUBJECT
26  DIGITAL DEVICES for the purpose of identifying electronically stored data particularly
27  described in Attachment B.
28

AFFIDAVIT OF JILL PEOPLES - 2
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7. As discussed below, there is probable cause to believe that the SUBJECT DIGITAL DEVICES contain evidence, instrumentalities, contraband, and fruits of violations of 18 U.S.C. § 922(g)(1), felon in possession of firearms and ammunition, 18 U.S.C. § 545, smuggling goods into the United States, 26 U.S.C. § 5861(d), possession of unregistered firearms, 18 U.S.C. § 922 (a)(1)(A), unlawfully engaging in the business of importing or shipping firearms without a license, 18 U.S.C. § 922 (l), knowingly import into the United States any firearm or ammunition, and 18 U.S.C. § 922 (p) importing a firearm not detectable as the Security Exemplar. I seek authorization to search the SUBJECT DIGITAL DEVICES for items that are described in Attachment B to this affidavit, which is incorporated herein by reference.

8. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from witnesses, other special agents, law enforcement officers, documents, open source and government databases. This affidavit contains the information necessary to support probable cause and does not contain every material fact that I have learned during the course of the investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

## SUMMARY OF INVESTIGATION

### A.   *Prior Search Warrant*

9. On September 16, 2020, I applied for and was granted a search warrant by the Honorable Michelle L. Peterson, United States Magistrate Judge, Western District of Washington, No. MJ20-598, to search Camden Lamp's residence in Des Moines, Washington, for firearms, firearm silencers; documents and records related to the smuggling and possession of firearms and firearm silencers; and digital devices. A copy of the Application for Search Warrant and the Search Warrant are attached as Exhibit A,

AFFIDAVIT OF JILL PEOPLES - 3
USAO 2020R00865

1    and incorporated by this reference as though fully re-stated. The investigative facts that

2    established probable cause of Lamp's unlawful possession of firearms and smuggling of

3    firearms is stated in my Affidavit provided in support of the Application. *See* Exhibit A.

4        10.   The Search Warrant authorized the seizure of digital devices, and restricted

5    the search of seized digital devices unless an additional search warrant application was

6    submitted for those devices within 14 days of the seizure of the devices. As detailed

7    below, two digital devices were seized from Lamp and Lamp's residences. It is believed

8    that those devices will contain evidence of Lamp's efforts to obtain, purchase, and

9    smuggle firearms and firearm parts, and ammunition.

10    **B,**    ***Execution of Search Warrant***

11        11.   On September 17, 2020, arrangement were made for a postal employee to

12    deliver a parcel shipped from China containing a firearm silencer to Lamp's Des Moines

13    residence in the morning. The employee knocked on the door and received no response,

14    and left the parcel between the screen door and front door.  Surveillance of the residence

15    during the daytime hours showed that several other packages were delivered throughout

16    the day.  When Lamp's wife arrived at the residence in the late afternoon, she opened two

17    of the packages while outside on the front stoop; neither were the parcel addressed to

18    Camden Lamp left by the postal employee.  She placed that parcel, unopened, and

19    another package in the house.  Agents observed Camden Lamp arrive home a short time

20    later.

21        12.   Other agents and I then approached the residence and announced

22    ourselves, and that we had a search warrant. Entry was made into the home without

23    incident. Agents advised Camden Lamp of his rights under Miranda and he stated he

24    would speak with agents once he had a lawyer.  The parcel addressed to Camden Lamp

25    containing with the firearms silencer was located directly inside the front door of the

26    residence.

27        13.   A.K., Lamp's wife, in response to agents asking if there was anything

28

AFFIDAVIT OF JILL PEOPLES - 4
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   dangerous in the home, stated that Lamp had a gun in a safe in the house.  During an
2   interview of A.K., she stated that Lamp had a gun in the safe in their bedroom in the
3   closet on the far right side about chest height. A.K. stated that she knew what a gun was
4   and had fired one before, but was unfamiliar with any details about guns.  A.K.
5   acknowledged that she orders items online from Amazon and DSW, in addition to other
6   common retailers.  As for international online retail sites, A.K. stated that she has
7   purchased only clothes.  She and Lamp do not share online accounts, packages come
8   addressed to whoever orders them, and they do not open each other's packages.  A.K.
9   stated that Lamp has a work computer and that she and Lamp share one computer.

10           14.   Forced entry was made into the gun safe. Inside the safe were a loaded
11   9mm pistol with no serial number or manufacturer information, a small bag with three
12   15-round magazines, and an additional 15-round magazine, and a 21-round magazine.
13   The frame of the 9mm pistol resembles a Glock pistol.  Also inside the safe were various
14   identification and financial documents, including Lamp's Bureau of Prison Identification
15   Card.

16           15.   Lamp signed a consent to search form for his work computer. An agent
17   conducted a preview search of the work computer and did not locate any information
18   pertaining to firearms or firearm parts on this computer. The work computer was then left
19   with A.K. at the residence.

20   **C.    *Seizure and Use of Digital Devices***

21           16.   One black Acer laptop with serial number NXMMSAA0134361596C3400
22   was located on the floor in a bedroom of the Lamp residence. This was the computer that
23   is shared for use by Lamp and A.K. The Acer laptop was seized pending submission of a
24   search warrant application.

25           17.   Lamp was placed under arrest for smuggling of the firearms silence.[1]

26

27   _____

28   [1] Camden Lamp was charged by Criminal Complaint with Smuggling of Merchandise (18 U.S.C. § 545) on
     September 17, 2020. *United States v. Camden Lamp*, Case Number MJ20-605.

1    During a search incident to arrest, agents located and seized one black/gray iPhone with
2    no visible model or serial number in Lamp's left hand.

3            18.   The 9mm pistol with no serial number or manufacturer information is a
4    homemade firearm also known as a ghost gun.  Based on my training and experience, and
5    from information provided by ATF agents, I know that a ghost gun is a firearm that is
6    assembled by individuals from firearm parts or by purchasing a firearm build-it-yourself
7    kit. The build-it-yourself kit and/or firearm parts are typically purchased online, or certain
8    parts, such as a frame or receiver, may be obtained by a person-to-person transaction.
9    Ghost guns do not have a commercial serial number or other identifying marks, and is not
10   traceable by law enforcement. Moreover, persons such as Lamp who are prohibited from
11   possessing firearms and firearm parts are not able to purchase or obtain those items from
12   a brick and mortar retailer or an online retailer as those businesses would require Lamp to
13   complete ATF forms and conduct a firearms background check.  To circumvent this
14   requirement, felons such as Lamp will commonly place orders online for firearm parts
15   and build-it-yourself kits that do not require background checks.

16           19.   Similarly, felons such as Lamp may try to avoid purchasing ammunition at
17   a brick and mortar retailer, such as Cabela's, although a background check is not required
18   for the purchase of ammunition. Many felons prefer to purchase ammunition from
19   individual sellers to avoid any detection or record of purchase of the ammunition from a
20   retailer. They do so through a variety of online websites that advertise and sell personal
21   items, such as Ebay, Craigslist, OfferUp, and other similar websites. They will also use
22   their digital devices, particularly cellular phones, to communicate with individual sellers
23   of ammunition, and arrange for the ammunition to be shipped to them, or arrange to meet
24   with the seller in person to obtain the ammunition.

25           20.   The firearm silencer shipped from China would also have been an order
26   placed online. As explained in my prior Affidavit in Case Number MJ20-598, I know that
27   persons will order firearm silencers using search terms such as fuel filter to locate an
28   international business that is actually selling firearm silencers. Based on my online search

AFFIDAVIT OF JILL PEOPLES - 6
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

for firearm silencers, I have learned that the description of the advertised item will state, for example, "fuel filter," but the image of the item that is being offered for sale is actually a silencer.

21. For these reasons, I believe that Lamp was using the SUBJECT DIGITAL DEVICES to search for and place online orders for firearms, firearm parts, and ammunition, and to facilitate the smuggling of firearms and firearm parts.

**BASIS OF KNOWLEDGE**

22. Based on my training, education, experience and discussion with other local, state, and federal law enforcement officers, I know:

a. To use a silencer or firearm suppressor for its intended purpose, a person must possess a firearm. The national pipe tapered threads are different for different firearms. A person would order a silencer with national pipe tapered threads to fit a weapon they already have.

b. Persons use digital devices to place orders online for firearms such as silencers, as well as firearm parts, firearm build-it-yourself kits, and ammunition. They often communicate with the online sellers and shippers via online communication platforms to include e-mail, instant messaging services, text messaging services and encrypted communication platforms. As a result, evidence of the acquisition of firearms, firearm parts, ammunition, and the smuggling of silencers can be located in emails, text messages, online accounts, and other data that is stored on cellphones and other electronic devices. The order information is maintained in digital or electronic format to facilitate postal tracking of the order and to make future orders. People that order merchandise online have it shipped to themselves at their home address.

c. As the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, *i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmark" files. Digital information can also be retained unintentionally. For example, traces of the path (including, but not limited to, the IP address) of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. In other words, if a computer user were to go to the website called WWW.USDOJ.GOV, a

AFFIDAVIT OF JILL PEOPLES - 7
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"footprint" in the browser cache may be found pointing to that website, indicating that particular computer was used to visit that website.

        d.      Records of purchases and resale are often maintained on digital devices, to include computers, laptops, cell phones, iPads, and other similar devices.

        e.      Persons who order merchandise online use electronic methods of payments linked to the purchaser, including Paypal. These records of electronic payments will be maintained on their digital devices.

        f.      Persons involved in smuggling goods, including silencers, into the United States often smuggle more than one shipment of contraband into the United States.

## TECHNICAL TERMS

**A.**    **Wireless Telephone**

    23.  Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.      A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.      <u>Internet and Online</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Websites can be accessed online using the Internet.

**B.**    **Computers and Electronic Storage**

    24.  Based on my knowledge, training, and experience, I know that digital

AFFIDAVIT OF JILL PEOPLES - 8
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

devices and electronic storage media can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device used to access the Internet.   This information can sometimes be recovered with forensic tools.

25.   There is probable cause to believe that things that were once stored on the SUBJECT DIGITAL DEVICES may still be stored there, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later

1  using forensic tools. This is so because when a person "deletes" a file on a computer, the
   data contained in the file does not actually disappear; rather, that data remains on the
2  storage medium until it is overwritten by new data.

3         f.      Therefore, deleted files, or remnants of deleted files, may reside in
4  free space or slack space—that is, in space on the storage medium that is not currently
   being used by an active file—for long periods of time before they are overwritten. In
5  addition, a computer's operating system may also keep a record of deleted data in a
6  "swap" or "recovery" file.

7         g.      Wholly apart from user-generated files, computer storage media—in
8  particular, computers' internal hard drives—contain electronic evidence of how a
   computer has been used, what it has been used for, and who has used it. To give a few
9  examples, this forensic evidence can take the form of operating system configurations,
10 artifacts from operating system or application operation, file system data structures, and
   virtual memory "swap" or paging files. Computer users typically do not erase or delete
11 this evidence, because special software is typically required for that task. However, it is
12 technically possible to delete this information.

13        h.      Similarly, files that have been viewed via the Internet are sometimes
14 automatically downloaded into a temporary Internet directory or "cache."

15        26.  *Forensic evidence.*  As further described in Attachment B, this application

16 seeks permission to locate not only electronically stored information that might serve as

17 direct evidence of the crimes described on the warrant, but also forensic evidence that

18 establishes how the SUBJECT DIGITAL DEVICES were used, the purpose of its use,

19 who used it, and when. There is probable cause to believe that this forensic electronic

20 evidence might be on the SUBJECT DIGITAL DEVICES because:

21        a.      Data on the storage medium can provide evidence of a file that was
22 once on the storage medium but has since been deleted or edited, or of a deleted portion
   of a file (such as a paragraph that has been deleted from a word processing file).
23
24        b.      Virtual memory paging systems can leave traces of information on
   the storage medium that show what tasks and processes were recently active. Web
25 browsers, e-mail programs, and chat programs store configuration information on the
26 storage medium that can reveal information such as online nicknames and passwords.
   Operating systems can record additional information, such as the attachment of
27 peripherals, the attachment of USB flash storage devices or other external storage media,

28

AFFIDAVIT OF JILL PEOPLES - 10
USAO 2020R00865

1   and the times the computer was in use. Computer file systems can record information
2   about the dates files were created and the sequence in which they were created.

3         c.      As explained herein, information stored within a computer and other
4   electronic storage media may provide crucial evidence of the "who, what, why, when,
    where, and how" of the criminal conduct under investigation, thus enabling the United
5   States to establish and prove each element or alternatively, to exclude the innocent from
6   further suspicion. In my training and experience, information stored within a computer
    or storage media (e.g., registry information, communications, images and movies,
7   transactional information, records of session times and durations, internet history, and
8   anti-virus, spyware, and malware detection programs) can indicate who has used or
    controlled the computer or storage media. This "user attribution" evidence is analogous
9   to the search for "indicia of occupancy" while executing a search warrant at a residence.
10  The existence or absence of anti-virus, spyware, and malware detection programs may
    indicate whether the computer was remotely accessed, thus inculpating or exculpating the
11  computer owner and/or others with direct physical access to the computer.

12        d.      Further, computer and storage media activity can indicate how and
13  when the computer or storage media was accessed or used. For example, as described
    herein, computers typically contain information that log: computer user account session
14  times and durations, computer activity associated with user accounts, electronic storage
15  media that connected with the computer, and the IP addresses through which the
    computer accessed networks and the internet. Such information allows investigators to
16  understand the chronological context of computer or electronic storage media access, use,
17  and events relating to the crime under investigation. Additionally, some information
    stored within a computer or electronic storage media may provide crucial evidence
18  relating to the physical location of other evidence and the suspect. For example, images
19  stored on a computer may both show a particular location and have geolocation
    information incorporated into its file data. Such file data typically also contains
20  information indicating when the file or image was created. The existence of such image
21  files, along with external device connection logs, may also indicate the presence of
    additional electronic storage media (e.g., a digital camera or cellular phone with an
22  incorporated camera). The geographic and timeline information described herein may
23  either inculpate or exculpate the computer user. Last, information stored within a
    computer may provide relevant insight into the computer user's state of mind as it relates
24  to the offense under investigation. For example, information within the computer may
25  indicate the owner's motive and intent to commit a crime (e.g., internet searches
    indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program
26  to destroy evidence on the computer or password protecting/encrypting such evidence in
27  an effort to conceal it from law enforcement).

28

AFFIDAVIT OF JILL PEOPLES - 11
USAO 2020R00865

e.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

f.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

g.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SEARCH AND/OR SEIZURE OF DIGITAL DEVICES

28.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit imaging or otherwise copying all data contained on the SUBJECT DIGITAL DEVICES, and will specifically authorize a review of the media or information consistent with the warrant.

29.    In accordance with the information in this affidavit, law enforcement personnel will execute the search of the SUBJECT DIGITAL DEVICES as follows:

a.    Securing the Data

i. In order to examine the electronically stored information in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the SUBJECT DIGITAL DEVICES.

AFFIDAVIT OF JILL PEOPLES - 12
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ii. Law enforcement will only create an image of data physically present on or within the SUBJECT DIGITAL DEVICES. Creating an image of the SUBJECT DIGITAL DEVICES will not result in access to any data physically located elsewhere. However, if the SUBJECT DIGITAL DEVICES have previously connected to devices at other locations, it may contain data from those other locations.

b.   Searching the Forensic Images

i. Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

## CONCLUSION

30.  Based on the foregoing, there is probable cause to believe that the SUBJECT DIGITAL DEVICES contain evidence, instrumentalities, contraband, and fruits of violations of 18 U.S.C. § 922(g)(1), felon in possession of firearms and ammunition, 18 U.S.C. § 545, smuggling goods into the United States, 26 U.S.C. § 5861(d), possession of unregistered firearms, 18 U.S.C. § 922 (a)(1)(A), unlawfully engaging in the business of importing or shipping firearms without a license, 18 U.S.C. § 922 (l), knowingly import into the United States any firearm or ammunition, and 18 U.S.C. § 922 (p) importing a firearm not detectable as the Security Exemplar.  I therefore respectfully request that this Court issue a warrant authorizing the search of the

AFFIDAVIT OF JILL PEOPLES - 13
USAO 2020R00865

1  SUBJECT DIGITAL DEVICES as further described in Attachment A for the search and

2  seizure of the items more specifically described in Attachment B.

3

4                                        _____

5                                        Jill Peoples, Special Agent
                                         Homeland Security Investigations

6

7          The above-named agent provided a sworn statement attesting to the truth of the

8  foregoing affidavit by telephone on the 30th day of September, 2020.

9

10                                       _____

11                                       MICHELLE L. PETERSON
                                         United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF JILL PEOPLES - 14
USAO 2020R00865

# EXHIBIT A

AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington



CERTIFIED TRUE COPY
ATTEST: WILLIAM M. MCCOOL
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>SUBJECT PREMISES, more fully described in<br>Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. MJ20-598

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 545<br>18 U.S.C. § 5861(d)<br>18 U.S.C. §§ 922(a)(1)(A), 922(g)(1) | Smuggling goods into the United States.<br>Possession of unregistered firearms.<br>Unlawfully engaging in the business of importing firearms; Felon in possession of firearms |

The application is based on these facts:

✓ See Affidavit of HSI Special Agent Jill Peoples , continued on the attached sheet.

☐ Delayed notice of 90 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Jill Peoples, HSI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 9/16/2020

*Judge's signature*

City and state: Seattle, Washington

Michlle L. Peterson, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF JILL PEOPLES

STATE OF WASHINGTON )
                     )  ss
COUNTY OF KING )

I, Special Agent Jill Peoples, having been duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1.      I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), United States Department of Homeland Security, and have been so employed since December 2003. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") academy in Glynco, Georgia. I am currently assigned to the HSI Border Enforcement Security Task Force in Seattle, Washington, which is tasked with investigating violations of U.S. law involving contraband smuggling, trade fraud and financial crimes. Prior to my employment with HSI, I was a United States Probation Officer for approximately three years and was a Correctional Officer and Case Manager with the Bureau of Prisons for approximately three years.

2.      During my career, I have participated in investigations and executed search warrants involving theft, fraud, money laundering, smuggling, import and export violations, counterfeit goods, crimes against persons and drug trafficking. Because of this training and experience, I am familiar with common methods of investigating import and export violations and have become familiar with how smuggling schemes work. This experience includes knowledge on how individuals unlawfully import, export, store and resell smuggled goods, how individuals use the U.S. postal system to move contraband and how those involved in contraband smuggling conduct financial transactions to facilitate smuggling activity. I am also familiar with the manner in which individuals illegally acquire and import firearms and firearm parts from foreign countries to the United States, and the unlawful resale and distribution of firearm and firearm parts within the United States.

AFFIDAVIT OF JILL PEOPLES - 1
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      I make this affidavit in support of an application under Rule 41 of the Federal Criminal Rules of Procedure for a search and seizure warrant for the premises located at 23431 25th Ave S., Des Moines, Washington, as more specifically described in Attachment A (the "SUBJECT PREMISES").

4.      As discussed below, there is probable cause to believe that Camden Lamp, resides at the SUBJECT PREMISES, and has one or more firearms, along with documents and records of international purchases of firearms at the SUBJECT PREMISES.  In addition, there is probable cause to believe that Lamp has imported a silencer, for delivery to the SUBJECT PREMISES.

5.      Camden Lamp is prohibited from possessing firearms due to prior felony convictions, to include a conviction in the Western District of Washington, *United States v. Camden Nicholas Lamp*, CR05-00030RSL, on February 15, 2006, for felon in possession of firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered shotgun, in violation of 26 U.S.C. §§ 5841, 5861, and 5871.

6.      I seek authorization to seize the items from the SUBJECT PREMISES that are described in Attachment B to this affidavit, which is incorporated herein by reference.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from witnesses, other special agents, law enforcement officers, documents, open source and government databases. This affidavit contains the information necessary to support probable cause and does not contain every material fact that I have learned during the course of the investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

8.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

AFFIDAVIT OF JILL PEOPLES - 2
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## RELEVANT LAW

9.      This Application requests the Court to authorize a search warrant at the
SUBJECT PREMISES for evidence, instrumentalities, contraband, and fruits of
violations of 18 U.S.C. § 922(g)(1), felon in possession of firearms, 18 U.S.C. § 545,
smuggling goods into the United States, 26 U.S.C. § 5861(d), possession of unregistered
firearms, 18 U.S.C. § 922 (a)(1)(A), unlawfully engaging in the business of importing or
shipping firearms without a license, 18 U.S.C. § 922 (l), knowingly import into the
United States any firearm or ammunition, and 18 U.S.C. § 922 (p) importing a firearm
not detectable as the Security Exemplar.

10.     Title 18, United States Code, Section 922(g)(1), prohibits the possession of
firearms and ammunition by any person who has been convicted of a crime punishable by
imprisonment for more than one year.

11.     Title 18, United States Code, Section 545, prohibits fraudulently or
knowingly importing or bringing into the United States, any merchandise contrary to law.
Specifically, Section 545 states:

> Whoever knowingly and willfully, with intent to defraud the United States,
> smuggles, or clandestinely introduces or attempts to smuggle or clandestinely
> introduce into the United States any merchandise which should have been
> invoiced, or makes out or passes, or attempts to pass, through the customhouse any
> false, forged, or fraudulent invoice, or other document or paper; or whoever
> fraudulently or knowingly imports or brings into the United States, any
> merchandise contrary to law, or receives, conceals, buys, sells, or in any manner
> facilitates the transportation, concealment, or sale of such merchandise after
> importation, knowing the same to have been imported or brought into the United
> States contrary to law shall be fined under this title or imprisoned not more than
> 20 years, or both.

12.     Title 26, United States Code, Section 5861(d), provides, "It shall be
unlawful for any person...to receive or possess a firearm which is not registered to him in
the National Firearms Registry and Transfer Record."

13.     Title 18, United States Code, Section 921(a)(24), defines the terms "firearm
silencer" and "firearm muffler" to mean any device for silencing, muffling, or

AFFIDAVIT OF JILL PEOPLES - 3
USAO 2020R00865

1  diminishing the report of a portable firearm, including any combination of parts, designed
2  or redesigned, and intended for use in assembling or fabricating a firearm silencer or
3  firearm muffler, and any part intended only for use in such assembly or fabrication.

4      14.    Title 18, United States Code, Section 921(a)(3)(C), defines the term
5  "firearm" to mean any "firearm muffler" or "firearm silencer".  Any device that meets the
6  definition of "firearm silencer" or "firearm muffler" is subject to controls as defined in
7  the National Firearms Act, 26 United States Code, Chapter 53.  Under Title 26, United
8  States Code, Section 5845(a), silencers are considered firearms.

9      15.    Title 18, United States Code, Section 922 (a)(1)(A), provides that "It shall
10 be unlawful for any person except a licensed importer, licensed manufacturer, or licensed
11 dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or
12 in the course of such business to ship, transport, or receive any firearm in interstate or
13 foreign commerce."

14     16.    Title 18, United States Code, Section 922(l), provides in part, "It shall be
15 unlawful for any persons to import or bring into the United States or any possession
16 thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to
17 receive any firearm or ammunition which has been imported or brought into the United
18 States or any possession thereof."

19     17.    Title 18, United States Code, Section 922(p)(1), states, "It shall be unlawful
20 for any person to manufacture, import, sell, ship, deliver, possess, transfer, or receive any
21 firearm—(A) that, after removal of grips, stocks, and magazines, is not detectable as the
22 Security Exemplar, by walk-through metal detectors calibrated and operated to detect the
23 Security Exemplar . . ."

24     18.    Title 18, United States Code, Section 922 (p)(2)(C)(i), defines the term
25 "Security Exemplar" to mean an object, to be fabricated at the direction of the Attorney
26 General, that is constructed of 3.7 ounces of material type 17-4 PH stainless steel in a
27 shape resembling a hand-gun.

28

AFFIDAVIT OF JILL PEOPLES - 4
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF INVESTIGATION

**A.   Seized Parcel**

19.    On August 7, 2020, Custom and Border Patrol Officers (CBP) at incoming international mail facility in the San Francisco International Airport in California, inspected a parcel arriving from China. The shipping address on the parcel was "Eric jiang, No.419 gongyue rd, baoshan district, Shanghai, Shanghai, 201901, China," and the consignee was Camden Lamp, located at "23431 25TH AVE S, DES MOINES WASHINGTON 98198, UNITED STATES".   This delivery address is the SUBJECT ADDRESS.

20.    The parcel label stated it contained a fuel filter. The shipping weight of this parcel was 0.4 kilograms.  The declared value of the package was $2.  CBP Officers examined the contents of the parcel and determined the item to be consistent, in function and with the components, with that of a firearm silencer not a fuel filter.  A fuel filter is an item designed to allow fluid to pass through a permeable infrastructure which would allow for the filtering of fine particulate matter.  The appearance and use of a fuel filter is distinctly different than a firearm silencer.

21.    I have consulted with firearm experts with the Bureau of Alcohol, Tobacco, and Firearms (ATF), including ATF Special Agent (SA) Claudia Grigore. Based on my training and experience, and consultations with ATF experts, companies in China often advertise these silencers as car parts or toys to mask the item and actual intended use, and to enable smugglers to conceal the true nature of the commodity from customs inspectors.

22.    Markings on the box label for the parcel addressed to Camden Lamp appears to indicate the size of the National Pipe Threads for the silencer.  The silencer is labeled 5/8 x 24, which according to ATF Bulletin 20-01 would fit a variety of rifles to include .308, .30, UZI Carbine, Ruger Mini 30, AR-10, M14, 300 Blackout, and an AR-15.

23.    I received the parcel with silencer on August 19, 2020. The below are photographs of the silencer:

AFFIDAVIT OF JILL PEOPLES - 5
USAO 2020R00865







AFFIDAVIT OF JILL PEOPLES - 6
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



24.     SA Grigore has received specialized training on firearms, which includes training on silencers. I have also reviewed ATF Firearms & Ammunition Technology Division Technical Bulletin 20-01 of October 30, 2019, (ATF Bulletin 20-01) concerning components of a silencer. SA Grigore and I have examined the item in the parcel addressed to Camden Lamp, and based on my training and experience, and consultation with SA Grigore, the parcel contains all the components to be a silencer, including baffles and marked points for simple machine work, assembly, and adaptation. These components are noted in ATF Bulletin 20-01 as components for a silencer. The silencer pictured in ATF Bulletin 20-01 is as follows, and is similar to the silencer in the seized parcel:

AFFIDAVIT OF JILL PEOPLES - 7
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



### B.   Camden Lamp and Anita Kaufman

25.   I believe that the parcel's listed addressee, Camden Lamp at the SUBJECT PREMISES, is Camden Nicholas Kennedy Lamp, with date of birth of January 30, 1977. According to public record databases, Camden Lamp is married to Anita Kaufman, and they reside at the SUBJECT PREMISES. Lamp is employed with Fleetpride, a truck and trailer parts store. A truck with the Fleetpride logo has been observed by agents parked in the driveway of the SUBJECT PREMISES. There is a large star with the name, "LAMP", in the center of it hanging in the front window of the SUBJECT PREMISES.

26.   According to Washington State Department of Licensing, Camden Lamp, Anita Kaufman, and Brenda Stauffer all have driver's licenses and vehicles registered to the SUBJECT PREMISES. I do not know the relationship of Brenda Stauffer to Lamp and Kaufman, and she may also reside at the SUBJECT PREMISES.

27.   Camden Lamp is prohibited under federal law from possessing firearms and ammunition. Anita Kaufman and Brenda Stauffer are not prohibited under federal law from possessing firearms and ammunition.  None of them have any firearms registered in the National Firearms Transfer Record, including silencers, nor do any of them possess a Federal Firearms License or are they licensed by the federal government to be in the business of importing or selling firearms in the United States.

28.   According to law enforcement criminal records databases, Camden Lamp has the following prior felony convictions:

> a.   Felon in possession of firearm (18 U.S.C. § 922(g)(1), and possession of an unregistered shotgun, (26 U.S.C. §§ 5841, 5861, and 5871), *United States v. Camden Nicholas Lamp*, Case Number CR05-

AFFIDAVIT OF JILL PEOPLES - 8
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

00030RSL, United States District Court, Western District of Washington, February 15, 2006, sentenced to 48 months of imprisonment and three years of supervised release;

b.      Burglary First Degree, *State v. Lamp*, Case Number 03-109706-0, King County Superior Court, August 19, 2005, sentenced to 36 months of imprisonment and 18 months of probation;

c.      Burglary Second Degree, *State v. Lamp*, Case Number 96-1-01999-9, King County Superior Court, sentenced to three months of imprisonment and 12 months of community custody;

d.      Taking Motor Vehicle without Permission, *State v. Lamp*, Case Number 95-1-07266-2, King County Superior Court, sentenced to 30 days imprisonment and 12 months of community custody.

29.      The prior federal felony conviction involved Lamp's unlawful possession of the following firearms:  one Sendra Corp .223 caliber rifle, one Winchester 12 gauge shotgun, one Rossi .357 caliber handgun, one Intertec 9 mm handgun, one Hi-point 9mm carbine rifle (with no serial number) and a Winchester 12 gauge shotgun with a barrel of less than 18 inches long.

30.      Camden Lamp's employer, according to Washington State Employment Security Department, is Fleetpride, a nationwide chain of stores that sell truck and trailer parts. Some locations also offer repairs and maintenance for trucks.  Lamp's employment with an automotive parts and repair business should make him familiar with genuine automotive and truck parts.

**C.      Prior international packages**

31.      As part of this investigation, I have discovered through law enforcement database queries that other parcels with similar details were delivered to Camden Lamp. Since May 10, 2020, three other international packages, originating from China, have been sent to Lamp at the SUBJECT PREMISES. The manifests for these three packages indicated that they contained "lock, fixture, and underware".

AFFIDAVIT OF JILL PEOPLES - 9
USAO 2020R00865

32.    On August 17, 2020, a package from China, with the sender name of Eric Jiang and address of "No.419 gongyue rd, baoshan district, Shanghai, Shanghai, 201901, China", addressed to Camden Lamp was delivered to the SUBJECT PREMISES.  It was manifested as a "lock" and weighed .443kg with a declared value of $2. This August shipment originated from the same sender as the sender for the seized parcel, and I believe may have contained a firearm silencer.

33.    During my open source research of how to purchase silencers online from China, many of silencers were found on internet sites list fuel filters or other vehicle parts, but actually sell silencers.  All of the sites required electronic payment, often via PayPal.  Contact is limited to email or a contact form, and only in one instance, could I find a listed phone number for the business. Otherwise all orders and payment for orders had to be made online.

## BASIS OF KNOWLEDGE

34.    Based on my training, education, experience and discussion with other local, state, and federal law enforcement officers, I know:

a.    To use a silencer or firearm suppressor for its intended purpose, a person must possess a firearm.  The national pipe tapered threads are different for different firearms.  A person would order a silencer with national pipe tapered threads to fit a weapon they already have.

b.    A person interested in silencers will also be knowledgeable about firearms and own a variety of firearm accessories, parts, and ammunition.

c.    Persons use digital devices to place orders online for silencers. They often communicate with the online sellers and shippers via online communication platforms to include e-mail, instant messaging services, text messaging services and encrypted communication platforms.  As a result, evidence of smuggling of silencers can be located in emails, text messages, online accounts, and other data that is stored on cellphones and other electronic devices. The order information is maintained in digital or electronic format to facilitate postal tracking of the order

AFFIDAVIT OF JILL PEOPLES - 10
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and to make future orders.  People that order merchandise online have it shipped to themselves at their home address.

     d.    Records of purchases and resale are often maintained on digital devices, to include computers, laptops, cell phones, iPads, and other similar devices. These records may also be maintained in hard copy paper files, ledgers, logs, or books.

     e.    Persons who order merchandise online use electronic methods of payments linked to the purchaser, including Paypal. These records of electronic payments will be maintained on their digital devices.

     f.    Persons involved in smuggle goods, including silencers, into the United States often smuggle more than one shipment of contraband into the United States.

     g.    Persons who typically possess and own silencers will store their silencers and other firearms in their personal residence and other buildings on their property.

## DESCRIPTION OF SUBJECT PREMISES

35.    Attachment A provides a description of the SUBJECT PREMISES. I have conducted surveillance of the SUBJECT PREMISES and know that it is a two - story residence located at 23431 25th Avenue South, Des Moines, Washington.  The color of the house is pale yellow with white trim.  The house numbers, 23431, are visible on the house next to the front door.  In the large front window of the house are three signs.  One sign is a large five pointed star with the name, LAMP, in the center.  There is a driveway leading down to a single-story garage door in the lower level of the house. In the backyard is a small light tan outbuilding with white trim.  It has two glass French doors.

36.    On September 2, 2020, law enforcement installed a pole camera with live feed facing the residence to maintain active surveillance. SA Grigore observed the live feed from the pole camera on September 15, 2020, and also, the morning of September 16, 2020. During her observations, she saw Camden Lamp leave the residence in his

AFFIDAVIT OF JILL PEOPLES - 11
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Fleetpride truck in the early morning hours between 6:45 to 7:15 a.m., and return to the

2  residence between 5:00 p.m. and 6:00 p.m. Similarly on the morning of September 16,

3  2020, SA Grigore observed Lamp leave his residence in his Fleetpride truck during early

4  morning hours.

5       37.     According to public records searches, Camden Lamp and Raymond and

6  Melinda Lamp purchased the SUBJECT PREMISES on May 24, 2011. I do not know

7  the specific relationship of Camden Lamp with Raymond and Melinda Lamp. According

8  to Washington State Department of Licensing records, Raymond and Melinda Lamp

9  currently have licenses and vehicles registered to a separate address in Seattle,

10  Washington.

11       38.     I am requesting authority to search the main residence, the garage, the

12  outbuilding, any other outbuildings, and the entirety of the property for the items listed in

13  Attachment B, Items to be Seized.

14       39.     For these reasons, I believe that Camdem Lamp resides at the SUBJECT

15  PREMISES.

16                          **CONCLUSION**

17       40.     Based on the foregoing, there is probable cause to believe that at the

18  SUBJECT PREMISES, there is evidence, instrumentalities, contraband, and fruits of

19  violations of 18 U.S.C. § 922(g)(1), felon in possession of firearm, 18 U.S.C. § 545,

20  smuggling goods into the United States, 26 U.S.C. § 5861(d), possession of unregistered

21  firearms, 18 U.S.C. § 922 (a)(1)(A), unlawfully engaging in the business of importing or

22  shipping firearms without a license, 18 U.S.C. § 922 (l), knowingly import into the

23  United States any firearm or ammunition, and 18 U.S.C. § 922 (p) importing a firearm

24  not detectable as the Security Exemplar. I therefore respectfully request that this Court

25

26

27

28

AFFIDAVIT OF JILL PEOPLES - 12
USAO 2020R00865

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   issue a warrant authorizing the search of the SUBJECT PREMISES as further described

2   in Attachment A for the search and seizure of the items more specifically described in

3   Attachment B.

4

5

6                                       Jill Peoples, Special Agent

7                                       Homeland Security Investigations

8

9           The above-named agent provided a sworn statement attesting to the truth of the

10   foregoing affidavit by telephone on the  16th    day of September, 2020.

11

12

13                                       MICHELLE L. PETERSON

14                                       United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF JILL PEOPLES - 13                          UNITED STATES ATTORNEY
USAO 2020R00865                                         700 STEWART STREET, SUITE 5220
                                                        SEATTLE, WASHINGTON 98101
                                                        (206) 553-7970

## ATTACHMENT A

### Premises to be searched

The SUBJECT PREMISES is more fully described as: a two - story residence located at 23431 25th Avenue South, Des Moines, Washington 98198.  The color of the house is pale yellow with white trim.  The house numbers, 23431, are visible on the house next to the front door.  In the large front window of the house are three signs.  One sign is a large five pointed star with the name, LAMP, in the center.  There is a driveway leading down to a single-story garage door in the lower level of the house.

In the backyard is a small light tan outbuilding with white trim.  It has two glass French doors.

Photographs from public records and surveillance for the SUBJECT PREMISES:



Attachment A - 1
USAO 2020R00865



Attachment A - 2
USAO 2020R00865

**Attachment B**

**ITEMS TO BE SEIZED**

All documents, records, images, and items reflecting evidence, contraband, fruits, and instrumentalities of the commission of the following crimes: 18 U.S.C. § 545, smuggling goods into the United States, 18 U.S.C. § 922(g) (1), felon in possession of a firearm, 26 U.S.C. § 5861(d), possession of unregistered firearms, 18 U.S.C. § 922 (a)(1)(A), unlawfully engaging in the business of importing or shipping firearms without a license, 18 U.S.C. § 922 (l), knowingly import into the United States any firearm or ammunition, and 18 U.S.C. § 922 (p) importing a firearm not detectable as the Security Exemplar.

1.      Any silencers, firearms mufflers, and suppressors;

2.      Any firearms, ammunition, parts, and indicia of firearms relating to silencers, firearms mufflers, and suppressors;

3.      Any documents, packaging materials, or receipts related to the importation of silencers or firearm suppressors, or similar devices, from China or other countries, including but not limited to manifests, invoices, billing statements, postage, labels, and receipts.

4.      Any and all documentation relating to the ownership and occupancy of the SUBJECT PREMISES described in Attachment A, including mortgage documents, title records, utilities records, and records of payments.

5.      Any financial records associated with Camden Lamp to include business and personal checks, financial institution account statements, deposit and withdrawal and ATM slips, and credit/debit card slips and statements, which may be evidence of payment of silencers, firearm suppressors, and similar devices.

8.      Any and all documents and tangible items relating to any means of identification (real or fraudulent) to include passports, birth certificates, drivers licenses, applications, forms, letters and stationary in the name of Camden Lamp for the purpose of indicia of occupancy at the SUBJECT PREMISES as further described in Attachment A.

**Digital Devices to be Seized Only**
Agents will seize and/or image on-site any digital devices located at the SUBJECT PREMISES.  Agents *will not* search the digital devices pursuant to this warrant. Any seized digital devices will be returned to Camden Lamp and Anita

Kaufman within two weeks unless an application for search warrant to search the digital devices for evidence of the crimes listed above is submitted within that time period, a request to extend the date for the return of any seized devices is authorized by the Court, or consent is provided by Camden Lamp to seize and retain digital devices based on consent to search authorized by Camden Lamp.

9.      Any and all digital devices to include but not limited to computer hardware, computer software, laptops, cellular phones, smart phones, direct connect devices and their contents to include SIM cards, memory cards and other internal storage devices, and computer password and data security devices.

a.      Computer hardware is described as any and all computer equipment, including any electronic devices which are capable of collecting analyzing, creating, displaying, converting, storing, concealing or transmitting electronic, magnetic, optical or similar computer impulses or data. These devices include, but are not limited to any data processing hardware (such as central processing units, memory typewriters and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disks and diskettes, tape drives and tapes, optical storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors and optical readers); and related communication devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, pro able telephone dialing or signaling devices and electronic tone generating devices); as well as any devices, mechanisms or parts that can be used to restrict access to such hardware (such as physical keys or locks).

b.      Computer software is described as any and all information, including instructions, programs, or program code stored in the form of electronic, magnetic, and optical or other media which are capable of being interpreted by a computer or its related components. Computer software may also include certain data, data fragments or control characters integral to the operation of computer software. These items include but are not limited to operating system software, applications software, utility programs, compilers, interpreters, communications software and other programming used or intended for use to communicate with computer components.

c.      Computer passwords and data security devices are described as all those devices, programs or data – whether themselves in the nature of hardware or software – that can be used or is designed for use to restrict access to or facilitate concealment of any computer hardware, computer

Attachment B - 2
USAO 2020R00865

software, computer related documentation, electronic data, records, documents or materials within the scope of this application. These include but are not limited to any data security hardware (such as encryption devices, chips and circuit boards), passwords, data security software or information (such as test keys and encryption codes), and similar information that is required to access computer programs or data to otherwise render programs or data into a usable form.

software, computer related documentation, electronic data, records, documents or materials within the scope of this application. These include but are not limited to any data security hardware (such as encryption devices, chips and circuit boards), passwords, data security software or information (such as test keys and encryption codes), and similar information that is required to access computer programs or data to otherwise render programs or data into a usable form.

Attachment B - 3
USAO 2020R00865